1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SETH WALLACK and SAN DIEGO                    CASE NO. 11cv2996-GPC(WVG)
     VETERINARY IMAGING, INC.,
12                                                 ORDER GRANTING IN PART AND
                                    Plaintiffs,    DENYING IN PART DEFENDANTS'
13            vs.                                  MOTIONS TO DISMISS

14                                                 [ECF NOS. 9, 15]
     IDEXX LABORATORIES, INC.; IDEXX
15   REFERENCE LABORATORIES, INC.;
     MATTHEW WRIGHT; AND STEPHEN
16   WALTERS,

17                                  Defendants.

18                                  **INTRODUCTION**

19        Presently before the Court are two Motions to Dismiss filed by Defendants Matthew Wright

20   ("Wright") and Stephen Walters ("Walters"), (ECF No. 9-1); and Idexx Laboratories, Inc. ("Idexx")

21   and Idexx Reference Laboratories, Inc. ("Idexx RL"), (ECF No. 15).  Plaintiffs Seth Wallack

22   ("Plaintiff") and San Diego Veterinary Imaging, Inc. ("SD Imaging") opposed the motions, (ECF Nos.

23   18, 19), and Defendants replied, (ECF Nos. 23, 24).  Having considered the parties' submissions and

24   the applicable law, the Court **GRANTS** in part and **DENIES** in part Defendants' Motions to Dismiss.

25                                  **BACKGROUND**[1]

26        The Complaint asserts six causes of action:  (1) securities fraud in violation of Section 10(b)

27   and Rule 10(b)-5 of the Securities Exchange Act of 1934; (2) securities fraud in violation of California

28   _____

[1] Unless otherwise noted, all factual allegations in this section are taken from Plaintiffs' Complaint.  (ECF No. 1.)

1   Corporations Code sections 25401, 25403, 25501, and 25504.1; (3) intentional misrepresentation and

2   fraudulent concealment; (4) breach of fiduciary duty; (5) trademark infringement; and (6) request for

3   declaratory relief to resolve whether Idexx RL is the alter ego of Idexx and whether Idexx or Idexx RL

4   may continue to use the trademark at issue.

5        Plaintiff, a licensed veterinarian, established SD Imaging in 2002.  Plaintiff was one of the first

6   veterinary radiologists to promote "tele-radiology" – a digital imaging technology allowing

7   veterinarians to use the Internet to send x-rays to radiologists for an immediate consultation.  Plaintiff

8   recognized tele-radiology practices would require a software platform to store, analyze, and manipulate

9   imagery, as well as a platform to provide consultations online.  With this in mind, Plaintiff began

10  developing a software platform to service this need in 2004.  SD Imaging hired Defendant Walters,

11  a professional software developer, and offered him 20% of SD Imaging's stock.  Using the name

12  "DVMinsight," Plaintiff named the software, established a website, created a trademark, and

13  conducted his tele-radiology practice.  Plaintiff filed a trademark application in April, 2005, and

14  received a trademark registration for DVMinsight ("the Trademark") with SD Imaging as the owner

15  on August 7, 2007.

16       Plaintiff began working on an operation called the Veterinary Imaging Center of San Diego,

17  Inc. ("the Center") which formally launched in December, 2005.  Eventually, Walters ceased to offer

18  services to SD Imaging and worked solely at the Center.  Also, late in 2005, Defendant Wright, a

19  veterinary radiologist, joined Plaintiff and Walters at the Center.  Plaintiff and Wright became close

20  colleagues and interacted constantly with Walters to develop the software program.

21       In 2006, Plaintiff, Wright and Walters established DVMinsight, Inc. ("DVM") of which

22  Plaintiff and Wright each owned 40%, and Walters 20%.  Plaintiff claims the three owners understood

23  that SD Imaging retained ownership of the Trademark but permitted DVM to operate under the trade

24  name.  By 2008, DVM largely succeeded in developing the software program and by 2009 DVM's

25  software program was functional, popular, and successful.

26       Early in 2009, Wright traveled to Defendant Idexx's headquarters in Maine to discuss the

27  possibility of selling DVM to Idexx.  Upon his return, Wright reported that Idexx had expressed a

28  "passing interest" in DVM and "would not pay more than $1 million for the entire DVM operation."

1    Wright said the discussions with Idexx had been unsuccessful and inconclusive.

2         Plaintiff claims from mid-2009 onward, Wright became "inexorably unfair" towards Plaintiff

3    and managed to "win over" Walters who would side with Wright during the near-daily quarrels.

4    Plaintiff also claims Wright convinced key administrative assistants they would be better off if they

5    sided with Wright and Walters.  Wright allegedly indicated that if Plaintiff did not leave DVM, Wright

6    was prepared to manipulate corporate structures to justify improperly diverting DVM revenues to the

7    private companies of Wright and Walters, and would conduct a series of transactions which would

8    saddle Plaintiff with debt while depriving him of revenues.  In late 2009, Wright and Walters

9    terminated Plaintiff as an administrator of the software program, changed ownership of DVM's

10   domain name which denied Plaintiff access, gave themselves pay raises and bonuses without offering

11   Plaintiff the same, and engaged in ongoing discussions with DVM's accountant without explaining

12   the nature of these discussions to Plaintiff.

13        Plaintiff agreed to negotiate with Wright and Walters for the sale of his 40% interest in DVM

14   and proposed they hire a business valuation specialist to assess a fair price for Plaintiff.  Plaintiff

15   claims Wright "angrily refused" and insisted that if the purchase did not take place immediately, he

16   would find other means of excluding Plaintiff from its operations.  Upon an initial offer of $100,000,

17   Plaintiff called Fred Farber, an Idexx officer, regarding Wright's negotiations with Idexx.  Farber

18   responded that Idexx had "floated a sales price 'in the neighborhood of $1 million' that Idexx might

19   be willing to pay for DVM . . . and indicated that he had given no further thought to this matter and

20   expected that Idexx would not pursue the matter any further."

21        Thereafter, Wright, Walters, and Plaintiff agreed to value DVM at $686,250, offering Plaintiff

22   $274,500 for his 40% share plus $30,000 in exchange for a mutual release set forth in a purchase

23   agreement ("the Purchase Agreement")[2] signed December 31, 2009.  The mutual release states:

24

---

25   [2] Even if a document is not attached to the complaint, it may be incorporated by reference if it forms
26   the basis of the plaintiff's claim.  United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003).  The
     Plaintiff submitted an Appendix of Exhibits containing the Purchase Agreement, which is referred to
27   in the Complaint and integral to the Plaintiff's claims.  (ECF No. 7, Exhibit 1.)  The Court considers
     this Exhibit as incorporated by reference.

28

[11cv2996-GPC(WVG)]

1
2
3
4

". . . [Plaintiff] releases [DVM, Wright, and Walters] and their attorneys, employees, and agents from all claims, liabilities, obligations, promises, agreements, controversies, and damages of any nature and kind . . ." specifically including "all claims under any federal, state, or local statute, rule, or regulation, as well as any claims for negligent or intentional infliction of emotional distress, breach of contract, fraud, or any other unlawful behavior, the existence of which [DVM, Wright, Walters, and Plaintiff] deny."

5
6
7
8
9

(ECF No. 7 at 2, ¶ 2.)  The Purchase Agreement also includes a non-solicitation clause forbidding Plaintiff from soliciting any listed customer of DVM.  Plaintiff claims he realized only after signing the Purchase Agreement that the list was over-inclusive and included even potential clients of DVM.  Plaintiff claims Wright refused to remove the names of non-customers, even though prior to signing the Agreement he indicated he would do so.

10
11
12
13
14
15
16
17
18
19

In September, 2011, Defendant Idexx RL, a subsidiary corporation owned and controlled by Idexx, acquired DVM and Animal Insides (a company owned by Wright) for a total of 3.2 million dollars, $3 million of which Plaintiff attributes to DVM.  Plaintiff claims the value of DVM did not change from the date Plaintiff sold his interest to the date Idexx purchased DVM making it "inconceivable that the DVM's value improved more than four-fold during this period."  Plaintiff claims that contrary to statements made by Idexx and Wright, Defendants made an agreement in 2009 for the purchase of DVM for approximately $3 million dollars, an agreement to conceal the purchase price by having Idexx[3] bundle their purchase with Animal Insides, and an agreement to delay the purchase until after Plaintiff's departure.  Upon purchasing DVM, Idexx began use of the Trademark without permission from Plaintiff.

20

**DISCUSSION**

21

**I.**   **Legal Standard**

22
23
24
25
26
27

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' it [does] demand[] more than an unadorned, the-defendant-

28

---

[3] Idexx and Idexx RL are hereafter jointly referred to as "Idexx."

unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl.</u>
<u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the
'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citing <u>Papasan</u>
<u>v. Allain</u>, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'
devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 557).
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,
to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see</u>
<u>also</u> Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing
<u>Twombly</u>, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be
"more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>  Facts "'merely consistent
with' a defendant's liability" fall short of a plausible entitlement to relief. <u>Id.</u> (quoting <u>Twombly</u>, 550
U.S. at 557).

Further, the Court need not accept as true "legal conclusions" contained in the complaint. <u>Id.</u>
This review requires context-specific analysis involving the Court's "judicial experience and common
sense." <u>Id.</u> at 679 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has alleged—but it has not
'show[n]'—'that the pleader is entitled to relief.'" <u>Id.</u>

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
determines that the allegation of other facts consistent with the challenged pleading could not possibly
cure the deficiency.'" <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992) (quoting
<u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other
words, where leave to amend would be futile, the Court may deny leave to amend. <u>See Desoto</u>, 957
F.2d at 658; <u>Schreiber</u>, 806 F.2d at 1401.

/ / / /

/ / / /

/ / / /

[11cv2996-GPC(WVG)]

**II.      Analysis**

**A.      The Purchase Agreement and Mutual Release**

Wright and Walters claim the unambiguous language of the release conveys the intent to finally and definitively resolve all claims and buy peace, therefore all claims should be dismissed.  (ECF No. 9-1 at 8: 23-24.)  Plaintiff claims that Wright and Walters induced Plaintiff to enter into the Purchase Agreement by fraud and breach of fiduciary duty, effectively vitiating the Agreement and any release contained therein.  (ECF No. 1 at ¶ 95; ECF No. 19 at 8: 16-23.)

DVM, Wright, Walters, and Plaintiff executed a Purchase Agreement containing a mutual release from all claims and liabilities. (ECF No. 7: Exhibit 1 at ¶ 2.)  The Purchase Agreement states that the rights and obligations of the parties shall be enforced by the laws of California.  (ECF No. 7: Ex. 1 at § 5.5.)

**1.      Release of Federal Law Causes of Action**

Where violations of both state and federal laws are alleged, federal law governs all questions relating to purported releases of federal statutory causes of action.  Petro-Ventures, Inc. v. Takessian, 967 F.2d 1337, 1340 (9th Cir. 1992).  According to the federal anti-waiver provision of Section 29(a) of the Securities Exchange Act of 1934, any stipulation binding a person to waive federal securities claims shall be void.  15 U.S.C. § 78cc(a); Petro-Ventures, Inc., 967 F.2d at 1340-41.  However, application of the rule may depend on the context in which the waiver was signed.  In Burgess v. Premier Corp., plaintiffs (five doctors) invested in cattle based on the defendants' allegedly deceptive representation of quality, causing plaintiffs significant losses due to the misrepresentation.  727 F.2d 826, 830 (9th Cir. 1984).  Unaware of potential securities fraud, each plaintiff signed a document releasing the defendants from all claims.  Id. at 832.  The court held that because "[a] release is valid for purposes of federal securities claims only if the [plaintiffs] had *actual knowledge* that such claims existed, the release did not preclude their claim," thereby invalidating the release.  Id. at 831 (emphasis added).

In Petro-Ventures, Inc., the Ninth Circuit upheld a mutual release by distinguishing between buyers of securities in the context of "an exclusively business relationship," like the parties in Burgess, and those "acting in the adversarial setting that is characteristic of litigation." 67 F.2d at 1341-42.  The

1   court held that where an unambiguous release from liability is signed in a commercial context by

2   parties in roughly equivalent bargaining position, with ready access to counsel, the language of the

3   release indicates the intent of the parties.  Id. at 1342-43.  The court in Facebook, Inc. v. Pac. Nw.

4   Software, Inc. also upheld a mutual release noting that "[w]hen adversaries 'in a roughly equivalent

5   bargaining position and with ready access to counsel' sign an agreement to establish a general peace,

6   we enforce the clear terms of the agreement," even though potential securities fraud was later

7   discovered.  640 F.3d 1034, 1039 (9th Cir. 2011) (citing Locafrance U.S. Corp. v. Intermodal Sys.

8   Leasing, Inc., 558 F.2d 1113, 1115 (2d Cir. 1977)).  In sum, a mutual release from any future federal

9   securities fraud claim may be upheld if it is: (1) unambiguous, (2) signed by adversaries, (3) with ready

10   access to counsel, (4) in roughly equivalent bargaining power and (5) with the mutual intent to

11   establish peace.  See id.; Petro Ventures, Inc. 67 F.2d at 1341-42.  Otherwise, a mutual release from

12   federal securities fraud claims is void unless the parties to the agreement had *actual knowledge* of the

13   claims at the time they signed the agreement.  See Burgess, 727 F.2d at 831.

14          Neither Plaintiff nor Defendants allege that the mutual release is ambiguous, but rather differ

15   as to whether the circumstances surrounding the signing of the Agreement are sufficient to invalidate

16   its terms.  Like the parties in Facebook and Petro Ventures, Inc., where the releases were upheld,

17   Plaintiff and Defendants were arguably in a position of equivalent bargaining power by virtue of their

18   personal knowledge of DVM and ownership of the company.  However, the parties were not

19   represented by counsel in negotiating the release and there is no indication that either party had ready

20   access to counsel.  It is also not clear whether the circumstances were more akin to adversaries settling

21   a controversy by buying peace, or individuals negotiating in a purely business relationship.  Finally,

22   Plaintiff claims he was not aware of his federal securities claim until the sale of DVM in 2011, almost

23   two years after signing the Agreement.  Thus, like the plaintiffs in Burgess who successfully

24   challenged the validity of the mutual release, Plaintiff did not have "actual knowledge" the claim

25   existed.  Defendants have not met their burden to show the circumstances in the instant case are

26   necessarily sufficient to uphold the mutual release and dismiss Plaintiff's claim; therefore, Plaintiff's

27   federal securities fraud claim will not be dismissed solely on the basis of the release.

28   / / / /

### 2.     Release of State Law Causes of Action

Under most circumstances, "if a defrauded party is induced by false representations to execute a contract, the party has the option of rescinding the contract . . . ." Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1153 (2005). Fraud in the inducement occurs when the party knows what he is signing, but his consent is induced by fraud, "which, by reason of the fraud, is *voidable*." Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 415 (1996) (emphasis in original). Where there is a duty to disclose, the non-disclosing party cannot escape liability by relying on a contract provision limiting the parties' representations to those stated in the contract. Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp. 32 Cal. App. 4th 985, 993 (1995).

Plaintiff, Wright, and Walters entered into an unambiguous agreement to settle all claims, known and unknown, including fraud. However, Plaintiff claims that absent Wright and Walter's securities fraud, fraudulent deceit, and breach of their fiduciary duty (Plaintiff's third, fourth, and fifth causes of action), Plaintiff would not have entered into the Agreement. Plaintiff has raised the requisite claim of fraudulent inducement to render the release "voidable," therefore, these claims will not be dismissed solely on the basis of the mutual release.

### B.     Fraud

The allegations underlying Plaintiff's first four causes of action, at least in part, are based on the theory that Defendants engaged in a concerted plan to fraudulently mislead the Plaintiff into believing negotiations between Idexx and Wright were unsuccessful in order to induce the Plaintiff to sell his 40% interest in DVM at a greatly devalued price. (ECF No. 19 at 4: 4-22.) Wright and Walters claim Plaintiff has not pled any facts, let alone with the requisite detail, to demonstrate the existence of the alleged 2009 agreement or that statements made by Defendants were false. (ECF No. 9-1 at 12: 9-17.) Idexx claims Plaintiff has not alleged any facts that refute the accuracy of Idexx officer Fred Farber's statements. (ECF No. 15-1 at 6, 9: 15-16, 11-12.) Plaintiff contends the surrounding circumstances strongly indicate that Defendants concealed that Idexx agreed in 2009 to pay $3 million for DVM upon the understanding that Wright and Walters would first exclude Plaintiff; thus, their statements to the contrary were false. (ECF. No. 18 at 2: 6-12.)

Under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud must be pled

with particularity.  Fed. R. Civ. P. 9(b).  The particularity requirement means "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  Thus, to satisfy the specificity requirement of 9(b), a plaintiff is required "to plead *evidentiary facts*" and the court must "consider what inferences these facts will support—despite the pitfalls and inefficiencies of such an analysis at the pleading stage . . . ."  Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (emphasis added).  To most directly show misrepresentation, the plaintiff may draw on inconsistent contemporaneous statements or conditions which contradict the challenged statements.  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994).  Allegations "based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b)."  Zatkin v. Primuth, 551 F. Supp. 39, 42 (S.D. Cal. 1982).  However, "the requirements of Rule 9(b) may be 'relaxed as to matters peculiarly within the opposing party's knowledge,' if the plaintiffs cannot be expected to have personal knowledge of the facts prior to discovery."  In re Gupta Corp. Sec. Lit., 900 F. Supp. 1217, 1228 (N.D. Cal 1994) (quoting Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)).

In Fecht, plaintiffs adequately pled falsity in alleging that the defendants gave falsely positive statements regarding a company expansion program when, in reality, the defendants were aware the program was doing so poorly it would have to be curtailed or abandoned.  70 F.3d at 1083.  To show how the statements were false, plaintiffs cited contemporaneous inconsistent conditions like unsatisfactory sales at the time of the statements.  Id.  The court also found that the shortness of time between positive statements and public disclosure of the failing program, less than three months, was strong circumstantial evidence of misrepresentation.  Id. at 1083-84.  Yourish v. California Amplifier clarified that the "[Ninth Circuit has] allowed the temporal proximity of an allegedly fraudulent statement or omission and a later disclosure to *bolster* a complaint, [internal citation omitted], but [it has] never allowed the temporal proximity between the two, *without more,* to satisfy the requirements of Rule 9(b)."  191 F.3d 983, 997 (9th Cir. 1999) (emphasis in original). The plaintiffs in Yourish failed to adequately plead falsity because they primarily relied upon "the existence of 'true facts, which were known only to defendants due to their access to confidential non-public information about [their

company] and which they concealed from the public.'" Id. at 983 (quoting the complaint). The court noted that if this was "sufficient to satisfy Rule 9(b)'s particularity requirements, plaintiffs could eliminate the falsity requirement entirely because they could merely identify a given statement by the defendant and then simply allege that the substance of the statement was contradicted by contemporaneous information contained in internal reports." Id. at 994. Further, "although it would furnish the defendants with notice, it would collapse Rule 9(b) into Rule 8(a)." Id.

Falsity is alleged for the statements made by Wright, corroborated by an Idexx officer, that a price of $1 million was considered by Idexx as the value of DVM, but ultimately no agreement to purchase DVM was reached. (ECF No. 1 at ¶¶ 90-91.) Plaintiff claims Defendants' statements were false because:  (1) Wright engaged in substantial and on-going negotiations with Idexx; (2) negotiations were successful and Idexx agreed to pay a price approaching or exceeding $3 million for DVM in 2009; and (3) Defendants agreed to delay the sale until after Plaintiff was excluded from DVM. (ECF No. 1 at ¶ 125.)  To support allegations of falsity Plaintiff alleges that (1) Defendants agreed to "bundle" the purchase with Animal Insides to obscure DVM's purchase price; (2) there was no change in value of DVM or the market between 2009 and September 2011; (3) Idexx paid approximately $3 million for DVM in 2011; (4) Defendants used deliberate mean-spirited measures to hastily remove Plaintiff from DVM; and (5) Defendant Wright refused to allow a valuation of DVM. (ECF No. 1 at ¶¶ 86, 87, 111, 133, 135.)

The primary allegation supporting the existence of a 2009 agreement to sell DVM for approximately $3 million, delay the purchase, and "bundle" the purchase to obscure DVM's purchase price is the sale of DVM and Animal Insides in 2011, almost two years after the alleged misrepresentation. See In re Glen Fed, 42 F.3d at 1549 ("The fact that an allegedly fraudulent statement and a later statement are *different* does not amount to an explanation as to why the earlier statement was false."). Unlike Fecht, where less than three months had passed between contradictory statements, twenty-one months had passed in the instant case. The price Idexx paid in 2011 does not have "temporal proximity" sufficient to bolster allegations that Idexx first agreed to pay that amount in 2009. See Yourish, 191 F.3d at 994. Plaintiff concludes there was no change in either DVM or the market in the intervening months between his sale of interest in DVM and the sale of DVM to Idexx.

Plaintiff has provided no facts to support this allegation making it impermissibly conclusory. Furthermore, like the plaintiffs in <u>Yourish</u>, who alleged the existence of confidential information without evidentiary allegations of its existence, Plaintiff has pled the existence of a 2009 agreement without sufficient particularity regarding its existence (i.e., where evidence of the agreement is to be found, in what form, and who at Idexx was involved in the agreement). <u>See Yourish</u>, 191 F.3d at 996 ("[W]e conclude that the complaint does not allege with sufficient particularity the details about the existence of the alleged 'non-public confidential information' that revealed the 'true facts' that were inconsistent with the various statement by the Defendants.").

Additional facts to support Plaintiff's allegation of fraud include Wright's refusal to allow a neutral appraisal of DVM prior to Plaintiff selling his shares and the diminishing relationship of Wright, Walters, and Plaintiff after Wright's meeting with Idexx. These allegations are neither inconsistent with the statements made by Wright or Farber nor suggestive of a secret agreement. <u>Cf.</u> <u>Fecht</u> 70 F.3d at 1083 (citing contemporaneous inconsistent conditions at the time of the allegedly false statement).

For the foregoing reasons, Plaintiff has not adequately pled the existence of the alleged 2009 agreement to purchase DVM for approximately $3,000,000 and delay the purchase; therefore, Plaintiff has not adequately pled the falsity of statements and omissions made by Defendants.[4]

**C.     Federal Securities Fraud Section 10(b) and Rule 10(b)-5 Claim as to all Defendants**

Wright and Walters claim the allegations set forth in Plaintiff's Complaint do not support the reasonable inference that Defendants made an agreement in 2009; therefore, Plaintiff has failed to state the requisite misrepresentation for federal securities fraud. (ECF No. 9-1 at 13: 5-7.) Idexx alleges Plaintiff's Section 10(b) claim fails at the outset because the Complaint fails to plead with particularity

_____

[4]Plaintiff contends that <u>Luciani v. Luciani</u> is "on all fours" with the instant cause of action. (ECF No. 19 at 12: 19-20.) The plaintiffs in <u>Luciani v. Luciani</u> adequately pled falsity to support a claim of fraud related to the sale of their partnership interest to majority owner/defendant. 10-CV-2583-JM WVG, 2011 WL 3859707 (S.D. Cal. Sept. 1, 2011). Over a year after the sale, the plaintiffs discovered the defendant had concealed material negotiations to sell a company asset–a fact making the plaintiffs' interest more valuable than the defendant previously represented. <u>Id.</u> at 2. This omission was sufficient to render the mutual release from all federal and state claims void. <u>Id.</u> The instant case is distinct from <u>Luciani</u> because the eventual sale of the asset was not the factual support the plaintiffs proffered as indication of an earlier omission; rather, the plaintiffs in <u>Luciani</u> learned of the actual negotiations, a contemporaneous inconsistency with the defendant's earlier non-disclosure of these negotiations.

[11cv2996-GPC(WVG)]

that Idexx misrepresented the truth. (ECF No. 15-1 at 6: 3-5.) Plaintiff contends he has satisfied the pleading requirements for a Section 10(b) and Rule 10(b)-5 claim, including allegations that Defendants' statements and omissions were both misleading and material. (ECF No. 19 at 19: 17-24.)

The SEC promulgated Rule 10b–5 pursuant to the authority granted under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301-02 (2011). To state a securities fraud claim, a plaintiff must show (1) a misstatement or omission of material fact, (2) made with scienter, (3) which proximately caused his or her injury, (4) in connection with the purchase or sale of a security. McCormick v. Fund Am. Co., Inc., 26 F.3d 869, 875-76 (9th Cir. 1994). Section 10(b) implies a private right of action, which does not extend to allegations of aiding and abetting securities fraud. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 148 (2008).

The Private Securities Litigation Reform Act ("PSLRA") requires federal securities fraud claims to satisfy heightened pleading requirements for both falsity and scienter. In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1084 (9th Cir. 2002). To adequately plead false statement of fact, a complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." Id. at 1085. If allegations of false statements are based on information and belief, the complaint must "provide, in great detail, all the relevant facts forming the basis for that belief. In re Immune Response Sec. Litig., 375 F. Supp. 2d 983, 1017 (S.D. Cal. 2005). In determining whether pleadings have met this standard, the court must consider plausible opposing inferences. Tellabs, Inc. et. al. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310 (2007).

Plaintiff alleges Wright, Walters, and Idexx violated Section 10(b) and Rule 10(b)-5 by misleading Plaintiff regarding the value of DVM upon his sale of securities, causing financial injury. (ECF No. 1 at ¶ 114.) The existence of a misleading statement or omission of material fact constitutes the primary element to be pled in a federal securities fraud cause of action. As per the discussion above, Plaintiff has not adequately pled that statements made by Farber and Wright were false, or that any Defendant omitted disclosure of an agreement; therefore, Plaintiff has not adequately pled the requisite falsity element of a Section 10(b) and Rule 10(b)-5. Plaintiff's federal securities claim fails to adequately state a claim against all Defendants.

[11cv2996-GPC(WVG)]

**D.      State Securities Fraud**

The second cause of action alleges violations of California securities fraud statutes against all Defendants. See California Corporations Code §§ 25401, 25403, 25501, and 25504.1. Plaintiff alleges Defendants' violations stem from failing to apprise him of the following facts: (1) Wright held significant negotiations with Idexx; (2) Idexx was prepared to pay approximately $3 million for DVM in 2009; and (3) Wright wanted to exclude Plaintiff before selling DVM to Idexx. (ECF No. 1 at ¶ 125.) Federal Rules of Civil Procedure, including 9(b), apply in federal court irrespective of whether the substantive law at issue is state or federal. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).

**1.      Violation of Sections 25401 and 25501 as to All Defendants**

In a similar response to Plaintiff's federal securities fraud claim, Wright and Walters claim "[Plaintiff's] complaint has done nothing more than state, in a rote matter, the elements of a cause of action for state securities fraud without setting forth sufficient *factual* allegations." (ECF No. 9-1 at 13: 21-22.) Idexx claims Plaintiff's allegations for violations of sections 25401 and 25501 fail as a matter of law because the strict privity requirement of section 25501 is not met. (ECF No. 15 at 11: 5-18.) Idexx also claims Plaintiff has failed to adequately allege an untrue statement of material fact required for liability under section 25401. (ECF No. 15 at 11: FN 12.) Plaintiff claims that, by the alleged misrepresentations and omissions, Wright and Walters led Plaintiff to sell securities at a fraudulently depressed price, thereby violating section 25401. (ECF No. 18 at 16: 6-8.) Plaintiff alleges Idexx made positive misrepresentations to him in order to facilitate Wright and Walter's plan, "knowingly [providing] 'material assistance' to them in their successful effort to defraud him into selling his stock at a depressed price - i.e., their violations of Section 25401." (ECF No. 18 at 16, 17: 24-28, 1-4.)

Section 25401 makes it unlawful to sell or offer to sell a security by means of a false statement of material fact, or an omission of material fact necessary to make the statement not misleading. Cal. Corp. Code § 25401; Boam v. Trident Fin. Corp., 6 Cal. App. 4th 738, 742 (1992). While section 25401 is penal in nature, the corresponding section 25501 establishes a private remedy for damages. California Amplifier, Inc. v. RLI Ins. Co., 94 Cal. App. 4th 102, 113 (2001); Cal. Corp. Code. § 25501.

- 13 -

Section 25501 articulates standing by providing that the person who violates section 25401 "shall be liable to the person who purchases a security from him . . ." thus, "section 25501 on its face requires privity between the plaintiff and defendant." Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 252-53 (2007); see also S.E.C. v. Seaboard Corp., 677 F.2d 1289, 1296 (9th Cir. 1982) (finding liability for a section 25401 violation is limited to actual sellers).

Plaintiff's sections 25401 and 25501 claims against all Defendants fail for the same reason as the federal securities fraud claim. The Plaintiff has failed to plead with requisite particularity factual and evidentiary allegations which plausibly suggest Defendants made misleading statements or omissions, a requisite element in a section 25401 claim. Furthermore, Idexx was not a party to the sale of securities by Plaintiff to Wright and Walters; therefore, the claim against Idexx fails as a matter of law because section 25501 requires privity in the transaction between the plaintiff and defendant for section 25401 liability.

### 2. Violations of Section 25504.1 as to All Defendants

Wright and Walters do not directly respond to the claim they "materially assisted" DVM with fraud beyond claiming the allegation of securities fraud fails for inadequately pleading falsity and material omission. (ECF No. 23 at 7: 21-25.) Idexx claims the Complaint fails to adequately allege primary liability for a violation of section 25401 by Wright and Walters, therefore, there can be no basis for section 25504.1 liability for material assistance of a section 25401 violation. (ECF No. 15 at 12: 16-19.)

Under section 25504.1, "a person who materially assists in any violation of section 25401, with intent to deceive or defraud, [is] jointly and severally liable for the violation." Apollo Capital Fund, 158 Cal. App. 4th at 235. As long as primary liability is stated with the requisite privity, secondary liability may also exist under section 25504.1 for those who participated in the violation. Moss v. Kroner, 197 Cal. App. 4th 860, 875 (2011).

The Complaint alleges Wright and Walters violated section 25504.1 when they induced Plaintiff to sell his stock in DVM on the basis of a diminished valuation. (ECF No. 1 at ¶ 127.) It also alleges Idexx violated section 25504.1 by providing material assistance to Wright, Walters, and DVM to commit fraud. (ECF No. 1 at ¶ 126.) Plaintiff's failure to adequately allege the requisite underlying

section 25401 claim is fatal to the section 25504.1 claim of material assistance against all Defendants. Furthermore, Plaintiff's section 25504.1 claim against Wright and Walters fails as a matter of law because the requisite section 25401 claim has neither been established nor alleged against DVM.

### 3.    Violation of Section 25403 as to All Defendants

Plaintiff has generally averred that all Defendants violated California Corporations Code section 25403. (ECF No. 1 at 27: Heading VI.) The civil liability provisions of sections 25500-25510 do not expressly provide a private right of action for section 25403. Apollo Capital Fund, 158 Cal. App. 4th at 255. Plaintiff lacks standing to file a claim for violation of section 25403; therefore, this allegation fails as a matter of law as to all Defendants.

### E.    Intentional Misrepresentation/Fraudulent Concealment against all Defendants[5]

Wright and Walters allege Plaintiff's third cause of action for intentional misrepresentation and fraudulent concealment fails, in part, because he has not supported his claims of fraud with sufficient particularity. (ECF Nos. 9-1, 23 at 16, 8: 1-5, 21-23.) Idexx alleges this claim fails because the Complaint does not allege with requisite specificity any false representation or concealment, scienter, or any specific duty of disclosure owed by Idexx to Plaintiff. (ECF No. 15 at 14-15: 26-28, 17-19.) Plaintiff claims Wright and Walters intentionally misrepresented and fraudulently concealed a plan to exclude him from DVM and afterwards sell it to Idexx. (ECF No. 19 at 25: 6-22.) Plaintiff claims Idexx is liable because Idexx had exclusive knowledge of the facts, actively concealed material facts from the Plaintiff, and made partial representations. (ECF No. 18 at 18: 18-27.)

"[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." Miron v. Herbalife Int'l, Inc., 11 F. App'x 927, 930 (9th Cir. 2001) (quoting  Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (emphasis in original)).  Intentional misrepresentation and fraudulent concealment are kinds of "fraudulent deceit" where one person willfully deceives another with the intent to induce him to alter his position causing injury." Cal. Civ. Code § 1709.  Intentional misrepresentation is "the suggestion,

---

[5] Plaintiff claims in his Opposition to the Motion to Dismiss made by Idexx that Idexx can be held liable under a theory of civil conspiracy to commit fraud. (ECF No. 18 at 19: 1-21.) Plaintiff has not alleged, in the Complaint, civil conspiracy against any Defendant; therefore the Court declines to consider this allegation.

as a fact, of that which is not true, by one who does not believe it to be true." Cal. Civ. Code §

1710(1). Concealment is "the suppression of a fact, by one who is bound to disclose it, or who gives

information of other facts which are likely to mislead for want of communication of that fact." Cal.

Civ. Code § 1710(3). To recover for intentional fraud, the plaintiff must allege: (1) the defendant

misrepresented a past or existing material fact; (2) the defendant knew the fact was false; (3) the

defendant intended to induce the plaintiff's reliance; (4) the plaintiff reasonably relied on the

misrepresentation; and (5) damages resulted. Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173

(2003).

The Complaint alleges that Defendants fraudulently concealed and intentionally misrepresented

the nature of the 2009 negotiations. (ECF No. 1 at ¶ 133.) Just as federal and state securities fraud

require a false statement or omission of fact as a condition precedent to whether the other elements

have been adequately pled, so does fraudulent deceit. Plaintiff has specified which statements and

omissions made by each Defendant he believes to be false or misleading, however underpinning the

alleged misrepresentation and concealment is an inadequately pled allegation of a 2009 agreement to

sell DVM. The Court concludes the Plaintiff has failed to sufficiently plead that any Defendant has

committed fraudulent deceit by intentional misrepresentation or fraudulent concealment.

**F.      Breach of Fiduciary Duty as to Wright and Walters**

Wright and Walters allege Plaintiff's Complaint fails to identify any factual allegations from

which the Court could infer breach of duty, (ECF No. 23 at 9: 7-10), and should be dismissed because

it is based on the same allegations of fraud in the first three causes of action and fails for the same

reasons, (ECF No. 9-1 at 16, 17: 23-28, 1-7). Plaintiff contends Wright and Walters, as officers and

directors of DVM, owed a fiduciary duty to Plaintiff based on his status as a minority shareholder and

have breached this duty, causing damages. (ECF No. 19 at 9: 12-28.)

To adequately allege breach of fiduciary duty, "a plaintiff must show the existence of a

fiduciary relationship, its breach, and damage caused by the breach." Apollo Capital Fund, 158 Cal.

App. 4th at 244. California law clearly recognizes that officers and directors owe a fiduciary duty to

stockholders, and controlling stockholders owe a fiduciary duty to minority stockholders. Singhania

v. Uttarwar, 136 Cal. App. 4th 416, 426 (2006); see also Southern Pac. Co. v. Bogert, 250 U.S. 483,

488 (1919) (finding that the majority has a "fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors."). "Majority shareholders may not use their power to benefit themselves alone or in a manner detrimental to the minority." Stephenson v. Drever, 16 Cal. 4th 1167, 1178 (1997). A fiduciary's dealings with the corporation "are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." Jones v. H.F. Ahmanson & Co., 1 Cal. 3d 93, 108-09 (1969).

According to the Complaint, Wright and Walters, as controlling shareholders and as officers and directors of DVM, owed a fiduciary duty to the Plaintiff, a minority shareholder and officer of DVM. (ECF No. 1 at ¶¶ 145, 146.) Plaintiff has stated he was a director and 40% shareholder of DVM, along with Wright and Walters who owned the remaining 60% of DVM. Plaintiff has adequately alleged that Wright and Walters, as majority shareholders and directors, were in a fiduciary relationship with the Plaintiff as co-director and minority shareholder of DVM. See Singhania, 136 Cal. App. at 426 (finding directors owe a fiduciary duty to stockholders); Southern Pac. Co., 205 U.S. at 488 (finding the majority is in a fiduciary relationship with the minority). This duty was allegedly breached, causing damages, when Wright and Walters: (1) failed to disclose the success of the 2009 negotiations and related agreement to sell DVM to Idexx; (2) provided Plaintiff with an "eleventh hour" all-encompassing list of customers subject to an illegal non-solicitation clause; and (3) subjected Plaintiff to a coordinated effort to make him feel unwelcome at DVM as well as used financial manipulation and professional exclusion so he would agree to a hurried sale of his interest. (ECF No. 1 at ¶¶ 64-65, 145-149.) The specific claims are as follows:

### 1.    Failure to Disclose a 2009 Agreement to Sell DVM To Idexx

The claim of breach of fiduciary duty based on fraudulent concealment of an agreement to sell DVM to Idexx in 2009 is identical to the first three causes of action for fraud. For the reasons stated above, this allegation fails to adequately plead falsity and omission of fact, therefore, this claim also fails to state a claim for breach of fiduciary duty for non-disclosure of a 2009 agreement to sell DVM to Idexx.

### 2. Illegal Non-Solicitation Clause

Plaintiff claims Defendants, by providing an "all-encompassing and illegal covenant against competition," breached their fiduciary duty by "resorting to subterfuge in order to deceive [Plaintiff] moments before he signed the Purchase Agreement." (ECF No. 1 at ¶ 149.) Wright and Walters have not directly responded to this claim.

Generally, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void. Cal. Bus. & Prof. Code § 16600. However, exceptions include the validity of an agreement where an owner of a business entity sells all of his or her ownership interest to a buyer, and is thereafter to refrain from carrying on a similar business within a specified geographic area. Cal. Bus. & Prof. Code § 16601. This "reflects the longstanding California authority to the effect that the good will of a business may not be owned by anyone other than the owner of the business." Golden State Linen Serv., Inc. v. Vidalin, 69 Cal. App. 3d 1, 10 (1977).

When Plaintiff sold his ownership interest in DVM, Defendants could lawfully enter into a non-compete agreement according to California law. However, Wright and Walters allegedly acted in a manner detrimental to Plaintiff by falsely representing a client list as only current clients of DVM, thereby causing Plaintiff damage by hindering his ability to lawfully compete for business which should not have been indicated on this list. Plaintiff has adequately pled breach of fiduciary duty for presenting an over-inclusive client-list counter to the interests of Plaintiff, to whom they owed the duty of loyalty and good faith.

### 3. Hostile Working Conditions, Financial Manipulation and Professional Exclusion

Plaintiff claims Wright and Walters subjected Plaintiff to a coordinated effort to make him feel unwelcome at DVM so he would agree to a hurried sale of his ownership interest; this included restricting Plaintiff's access to DVM's core operations and denying Plaintiff the same financial benefits conferred upon his partners, thereby breaching their fiduciary duty to him and causing him financial damage. (ECF No. 1 at ¶ 148.) Majority shareholders "may not use their power to benefit themselves alone or in a manner detrimental to the minority." Stephenson, 16 Cal. 4th at 1178.

Plaintiff has adequately pled that Wright and Walters, as fiduciaries of Plaintiff, breached their duty by using their power in a manner detrimental to Plaintiff's interests and without inherent fairness, causing him to make financially detrimental decisions he would not have otherwise made absent this breach of duty.

In sum, the Court grants Defendants' motion to dismiss the claim of breach of fiduciary duty as to Defendants failure to disclose a 2009 agreement to sell DVM to Idexx. The Court denies Defendants' motion to dismiss the breach of fiduciary duty claims related to allegations of an illegal non-solicitation clause and hostile working conditions.

## G.    Trademark Infringement Claim as to Idexx

Idexx claims that upon the purchase of DVM, the Trademark passed to Idexx. (ECF No. 15 at 17: 1-27.) Alternatively, Idexx claims SD Imaging abandoned its right to the Trademark, even if there was an oral license between SD Imaging and DVM, because SD Imaging failed to establish the control and oversight required to withstand a presumption of abandonment. (ECF No. 24 at 9: 4-23.) Plaintiff refutes any claim that the Trademark is presumed to follow the sale of DVM, and claims he could not assign the Trademark to DVM because the transfer could only be accomplished by its owner, SD Imaging. (ECF No. 18 at 22: 4-24.)

The Lanham Act provides that trademark registration is constructive notice of the registrant's claim of ownership. 15 U.S.C. § 1072. A trademark infringement claim requires plaintiff to show that defendants (1) used a reproduction, copy, or imitation of plaintiff's registered trademark, (2) without plaintiff's consent, (3) in connection with the sale, offering for sale, distribution or advertising of any goods, (4) where such use is likely to cause confusion, mistake, or deception. 15 U.S.C. § 114(1)(a); Brookfield Commc'n v. West Coast Entm't Corp., 174 F.3d 1036, 1046-47 (9th Cir. 1999). The critical inquiry is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes that product." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008) (citations omitted). However, registration alone does not provide definitive rights to a trademark. If a registered trademark is abandoned, the first person or entity to use the trademark in a commercially meaningful way is entitled to exclusive ownership of that mark. California Cedar Products Co. v. Pine Mountain Corp., 724 F.2d 827, 830 (9th Cir. 1984).

1   Additionally, abandonment may be found where the registered trademark owner extends a license to

2   use his trademark but fails to exercise adequate quality control over the licensee.  Barcamerica Int'l

3   USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 596 (9th Cir. 2002).

4          The Complaint alleges that because SD Imaging received trademark registration with SD

5   Imaging as the owner on August 7, 2007, it established and currently retains priority ownership of the

6   Trademark misappropriated by Idexx.  (ECF No. 1 at ¶ 162.)  The Complaint also alleges that the use

7   of the Trademark by Idexx has caused confusion between Idexx's operation and SD Imaging.  (ECF

8   No. 1 at ¶ 164.)  SD Imaging has adequately pled its trademark infringement claim.[6]

9   **H.**     **Declaratory Relief**

10         In their sixth cause of action, Plaintiff and SD Imaging request the Court to resolve two

11   controversies by judicial decree:  (1) whether Idexx RL should be deemed an alter-ego instrumentality

12   of Idexx and (2) whether Idexx and/or Idexx RL should be permitted to continue use of the Trademark

13   which Plaintiff claims is owned by SD Imaging.  (ECF No. 1 at ¶¶ 168-70.)  Plaintiffs argue that

14   "under the circumstances of this case, it would be unjust and inequitable to allow Idexx RL to maintain

15   the fiction of its separate legal existence and to absolve Idexx . . . ." (ECF No. 1 at ¶ 97.)   In a

16   footnote, Idexx claims Plaintiffs' cause of action for declaratory relief is entirely derivative of their

17   underlying claims and should be dismissed.  (ECF No. 15-1 at 2: FN 1.)

18         The Declaratory Judgment Act provides that "[i]n a case or actual controversy . . . any court

19   of the United States . . . may declare the rights and other legal relations of any interested party." 28

20   U.S.C. § 2201(a).  Consistent with the discretionary nature of the remedy, a district court may "stay

21   or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn

22   to a close."  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).  Idexx has not provided specific

23   legal or factual support for their argument that the Plaintiffs' request for declaratory relief for either

24   controversy should be dismissed at the pleading stage.  Therefore, Idexx's motion to dismiss Plaintiffs'

25   sixth cause of action is denied.

26   / / / /

---

27
28       [6]Idexx has alleged priority rights over the Trademark due to abandonment by SD Imaging.  A determination of abandonment requires resolving questions of fact not appropriate for consideration in a motion to dismiss.

[11cv2996-GPC(WVG)]

# **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants Wright and Walters' Motion to Dismiss.  The Court

1.      **GRANTS** Defendants' Motion to Dismiss the Section 10(b) and Rule 10(b)-5 federal securities fraud claim **WITHOUT PREJUDICE**.

2.      **GRANTS** Defendants' Motion to Dismiss sections 25401 and 25501 state securities fraud claims **WITHOUT PREJUDICE**.

3.      **GRANTS** Defendants' Motion to Dismiss sections 25504.1 and 25403 state securities fraud claims **WITH PREJUDICE**.

4.      **GRANTS** Defendants' Motion to Dismiss the breach of fiduciary duty claim for failure to disclose a 2009 agreement to sell DVM to Idexx **WITHOUT PREJUDICE**.

5.      **DENIES** Defendants' Motion to Dismiss the breach of fiduciary claims for illegal non-solicitation clause and hostile working conditions.

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant Idexx's Motion to Dismiss.  The Court

1.      **GRANTS** Defendant's Motion to Dismiss the Section 10(b) and Rule 10(b)-5 federal securities fraud claim **WITHOUT PREJUDICE**.

2.      **GRANTS** Defendant's Motion to Dismiss sections 25401, 25501, and 25403 state securities fraud claims **WITH PREJUDICE**.

3.      **GRANTS** Defendant's Motion to Dismiss section 25504.1 state securities fraud claim **WITHOUT PREJUDICE**.

4.      **DENIES** Defendant's Motion to Dismiss SD Imaging's trademark infringement claim.

5.      **DENIES** Defendant's Motion to Dismiss Plaintiffs' request for declaratory relief.

/ / / /

/ / / /

/ / / /

/ / / /

[11cv2996-GPC(WVG)]

1    Plaintiffs shall be granted leave to file an amended complaint **twenty-one (21) days** from the

2    date of this Order to file an amended complaint.

3         **IT IS SO ORDERED**.

4

5    DATED:  April 11, 2013

6

7                                                    HON. GONZALO P. CURIEL
                                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28