Cynthia A. Freeland, State Bar No. 180276
**Schor & Freeland, LLP**
600 B Street, Suite 2200
San Diego, CA  92101
Telephone:  +1 619 906 2400
Facsimile:+1 619 906 2401
Email:  Cindy@schorfreeland.com

Attorneys for Matthew Wright and Stephen Walters

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH WALLACK and SAN DIEGO VETERINARY IMAGING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>IDEXX LABORATORIES, INC.; IDEXX REFERENCE LABORATORIES, INC.; MATTHEW WRIGHT; AND STEPHEN WALTERS<br><br>Defendants. | Case No.  3:11-CV-02996-GPC(KSC)<br><br>**MATTHEW WRIGHT'S AND STEPHEN WALTERS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES AS SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY AND/OR 28 U.S.C. § 1927**<br><br>DATE:   June 3, 2016<br>TIME:    1:30 p.m.<br>CTRM:  4D<br>JUDGE:  Hon. Gonzalo P. Curiel |

# I.

# INTRODUCTION

Seth Wallack's ("Wallack") and San Diego Veterinary Imaging's ("SDVI") (collectively, "Plaintiffs") opposition to Matthew Wright's and Stephen Walters' Motion for Attorneys' Fees as Sanctions pursuant to the Court's Inherent Authority and/or 28 U.S.C. §1927 is an exercise in obfuscation, as was Wallack's pursuit of the underlying claims against Dr. Wright and Mr. Walters (collectively, the "Individual Defendants").[1]  At issue in the pending motion for attorneys' fees as sanctions is whether Plaintiffs and their counsel pursued the claims against the Individual Defendants in bad faith and/or whether their actions unreasonably and vexatiously multiplied the proceedings against Dr. Wright and Mr. Walters. The answer to these inquiries necessarily is a resounding "yes."

Notwithstanding the above, Plaintiffs attempt to obfuscate the issue by asking this Court deny the Motion for Sanctions because: (1) Plaintiffs' claim for trademark infringement against Idexx Laboratories, Inc.'s and Idexx Reference Laboratories' (collectively, "IDEXX") "was primarily caused by" the Individual Defendants (Opposition, p. 2, ll.19-23); (2) Plaintiffs defeated *IDEXX's* motion for summary judgment on the trademark infringement claim and, therefore, the trademark infringement claim against IDEXX was brought in good faith; (3) this Court did not entirely dispose of Wallack's claims against the Individual Defendants (which notably never included a trademark infringement claim) in response to the three motions to dismiss; (4) this Court has not previously made an express finding that the allegations levied by Wallack against the Individual Defendants were made in bad faith; and (5)

---

[1] It is ironic that Plaintiffs' Opposition does not comply with the Local Rules. More specifically, the United States District Court of Southern California, Local Rule 5.1 requires that "[p]rinted text, produced on a word processor or other computer, may be proportionally spaced allowing 28 lines on one side of the document, provided the type is no smaller than 14-point standard font (e.g. Times New Roman)." Plaintiffs' opposition is not 14-point standard font, which means that it well exceeds the page limit prescribed by Local Rule 7.1(h) without proper permission. To that end, Plaintiffs' Opposition should be disregarded.

Plaintiffs' counsel conducted a significant amount of research before filing the various amended pleadings in this matter. None of these assertions, however, address the issue at hand, and none of these assertions provide the Court with any reason to deny the requested sanctions.

What Plaintiffs conveniently neglect to address is that they and their counsel, in crafting the various pleadings, intentionally concealed facts that rendered the claims against the Individual Defendants frivolous. Plaintiffs and their counsel acted in bad faith by filing this lawsuit in the first instance, which bad faith was perpetuated by the needless multiplication of the proceedings through oppositions to motions to dismiss, amended pleadings, and the pursuit of discovery that Plaintiffs knew or should have known would not change the outcome. Plaintiffs and their counsel chose a path that has consequences, and they should not be permitted to avoid those consequences through further obfuscation.

## II.

## PLAINTIFFS' AND THEIR COUNSEL'S BAD FAITH CONDUCT WARRANTS THE IMPOSITION OF SANCTIONS

Plaintiffs and their counsel contend there can be no finding of bad faith in this case because when the Court ruled on the Individual Defendants' motions to dismiss, it supposedly "agreed with Plaintiffs on several key points in these motions, perhaps the most important of which was that could Plaintiffs prove in discovery that Wright/Walters committed breach(es) of fiduciary duty or fraud, the Releases in the Stock Repurchase Agreement that the parties had signed could be avoided." (Opposition, p. 2, ll. 12-15.) This contention, however, is disingenuous for one very significant reason: Plaintiffs did not allege, in any pleading presented to this Court, the true facts that they knew to exist at the time the lawsuit was filed that would render them unable, *ever*, to prove fraud or breach of fiduciary duty. Had Plaintiffs alleged *all* of the material facts, the first motion to dismiss would have been granted. The second and third motions to dismiss were made necessary only because Plaintiffs and

2

Case No 3:11-CV-02996-GPC-KSC
REPLY TO OPPOSITION TO MATTHEW WRIGHT'S AND STEPHEN WALTERS' MOTION FOR ATTORNEYS' FEES

their counsel omitted key facts from their successive amended pleadings. This conclusion is unavoidable given how this case played out.

More specifically, the Individual Defendants challenged the original pleading on the ground, among others, that the voluntary release in the Agreement precluded the claims levied in this lawsuit (the "Release Argument"). Plaintiffs opposed the Release Argument by asserting that Wallack could avoid an agreement containing releases if he could show that he would not have agreed to the releases except that the Individual Defendants "suppressed material information whose [sic] timely disclosure would have meant that the plaintiff never would have accepted the agreement in the first place." (*See* Plaintiffs' Request for Judicial Notice in Opposition to Wright/Walters' Motion for Attorneys' Fees, Ex. B024, ll. 1-9.)

In denying the Individual Defendants' original motion to dismiss, this Court ruled, in pertinent part, as follows:

> [n]either Plaintiff nor the Defendants allege that the mutual release is ambiguous, but rather different as to whether the circumstances surrounding the signing of the Agreement are sufficient to invalidate its terms. Like the parties in Facebook and Petro Ventures, Inc., where the releases were upheld, Plaintiff and Defendants were arguably in a position of equivalent bargaining power by virtue of their personal knowledge of DVM and ownership of the company. ***However, the parties were not represented by counsel in negotiating the release and there is no indication that either party had ready access to counsel. It is also not clear whether the circumstances were more akin to adversaries settling a controversy by buying peace, or individuals negotiating in a purely business relationship***.

(Defendants' NOL, Ex. B-8, ll. 14-21 (emphasis added).)

As the Court now knows: (1) Wallack, not only had access to counsel before the Agreement was executed in 2009, but was represented by William Markham ("Markham"), counsel who negotiated the Agreement on Wallack's behalf and who, in 2011, initiated this litigation on Plaintiffs' behalf (*see* Declaration of William Markham, Esq., Opposing Attorney Fees Motion, p. 2, ll. 14-18); and (2) Wallack signed the Agreement *after* his counsel threatened to sue the Individual Defendants

for, among other things, breach of fiduciary duty. (*See* Defendants' NOL, Ex. M-21 through M-22; M-71 through M-74.) As evidenced by this Court's Summary Judgment Order, what is damning for Plaintiffs and their counsel is that the Release Argument, when analyzed against the backdrop of the facts that Plaintiffs knew to exist at the time they filed the original complaint and the various amendments but failed to plead, was a basis (among other bases) for this Court's April 15, 2015 Order Granting Defendants Wright and Walters' Motion for Summary Judgment (the "Summary Judgment Order"). (*See* Notice of Lodgment in Support of Individual Defendants' Motion for Attorneys' Fees as Sanctions ("Defendants' NOL"), Ex. P1-P24.)

Plaintiffs next suggest that this Court cannot issue sanctions because it never expressly issued a finding of bad faith, yet the Court's Summary Judgment Order leads to that inescapable conclusion. Attempting to minimize the impact of the Court's Summary Judgment Order, Plaintiffs urge that the Court's ruling on the dispositive motion "is a far cry from a finding of recklessness, bad faith, that the case was frivolous or any other wrongful conduct that could compel the Court to award sanctions in this case." (Opposition, pp, 18, l. 23- p. 19, l. 3.) While Plaintiffs are correct that this Court did not expressly state in the Summary Judgment Order, or any other Order, that Plaintiffs' conduct in pursuing claims against the Individual Defendants was in bad faith, the Court need not have previously made such a pronouncement to make such a finding now, particularly given the strong language used in the Summary Judgment Order.

In articulating the bases for its acceptance the Release Argument, the Court explained in its Summary Judgment Order that: (1) Markham confirmed that in December 2009 he threatened to bring a lawsuit for the same claims that ultimately were levied against the Individual Defendants in this lawsuit in 2011 (Ex. P-19, ll. 12-28); (2) Wallack "not only was notified and aware of the move of operations of DVMI to Wright's home ***but actually condoned it***," (emphasis added) which meant that the

move of DVMI's operations could not be a basis to void the mutual release (Ex. P-20, ll. 4-22), (3) Plaintiff's allegation that the Individual Defendants breached a fiduciary duty by attempting to "steal" SDVI's registered ownership of the DVMInsight trademark as it was listed in the 2011 Asset Purchase Agreement with IDEXX could not have constituted a breach of fiduciary because, among other reasons, the sale occurred at a time when there was no fiduciary relationship between Wallack and the Individual Defendants. (Ex. P-20, l. 23-P-22, l. 8); (4) Wallack's assertion that the Individual Defendants retained Michael Christian, DVMI's counsel, to represent them was nothing more than "speculative argument" (Ex. P-22, ll. 9-24), and (5) to the extent that Wallack contended that the Individuals Defendants breached a fiduciary duty to him by "subjecting him to a coordinated effort to make his relationships with co-owners and his working environment a hostile one," the allegation was nothing more than a reiteration of his previous allegations "which have been shown to be *meritless* individually and are no more meritorious combined." (Ex. P-22, l. 25 – P-23, l.1 (emphasis added).) These explanations, while not expressly stating that the claims were brought in bad faith, lead to that inescapable conclusion.

    At the time Plaintiffs filed this lawsuit, and consequently at the time they submitted every other pleading and filing with this Court and, in fact, at the time they did anything to further their pursuit of claims against the Individual Defendants, Plaintiffs concealed material information from this Court. The Plaintiffs and their counsel knew, based on the Court's ruling on the Individual Defendants' original motion to dismiss, that the information that they intentionally omitted was critical to the Court's assessment of the viability of Plaintiffs' claims. Notwithstanding this, Plaintiffs purposefully ignored condemning facts in order to pursue patently frivolous arguments against the Individual Defendants. As courts have explained, "[r]aising a patently frivolous legal argument and threatening continued meritless litigation is the definition of bad faith." (*Terra v. Rabo Agrifinance, Inc.* (5th Cir. 2012) 504 Fed. Appx. 288, 290.)

The Plaintiffs and their counsel nonetheless argue that their position could not have been patently frivolous because Mr. Millar, before agreeing to represent the Plaintiffs, thoroughly reviewed the file and the legal research done by Markham and was convinced that there were legitimate grounds for pursuing the claims against the Individual Defendants. No amount of legal research, however, can insulate Plaintiffs or their counsel from the consequences of intentionally concealing material facts from this Court. Legal principles are not applied in a vacuum; they are applied to the entirety of the facts, not just those conveniently chosen to be presented or omitted by lawyers who have responsibilities as officers of the Court. As a result of their deliberate decision to proceed with litigation irrespective of the actual known facts, Plaintiffs and their counsel should be held responsible and, as a sanction for their bad faith conduct, should be made to compensate the Individual Defendants for the attorneys' fees and costs incurred in defending themselves against meritless claims.

## III.
## PLAINTIFFS' RELIANCE ON THE ALLEGED VIABILITY OF THE TRADEMARK INFRINGEMENT CLAIM AGAINST IDEXX TO OPPOSE THE MOTION FOR SANCTIONS IS MISPLACED

Conveniently ignoring their concealment of pertinent facts in the various pleadings that they submitted in this matter, Plaintiffs have the audacity to suggest that sanctions are inappropriate because:

> [a]s the Court also well knows, the cause of action against IDEXX for trademark infringement was **primarily caused by Defendants Wright and Walters lying to IDEXX and under oath in this case (and the Pet Rays case discussed below) that Wright was the person who created the trademark**, the trademark transferred to DVMinsight, Inc., as part of the Stock Repurchase Agreement, and then was "sold" to IDEXX. . . .
>
> Thus, it was Wright and Walters who were the root causes for this lawsuit to have been filed in the first place because they attempted to sell a Trademark Dr. Wallack's existing companies were using in their business operations in 2011, and from which they profited over $2 million from what

      valuation they forced Dr. Wallack to accept for his shares of stock in December 2009.

(Opposition, p. 2, ll. 20-22 (emphasis in original), p. 3, ll. 3-7.)  This is ludicrous for several reasons.

  First, Plaintiffs' assertion that the Court "knows that the cause of action against IDEXX for trademark infringement was primarily caused by Dr. Wright and Mr. Walters lying under oath" in this lawsuit as well as a lawsuit that was filed after Wallack had executed the Agreement defies logic.  The assertion ignores that: (1) the filing of this lawsuit necessarily had to precede Dr. Wright or Mr. Walters giving any testimony in this lawsuit and, therefore, any alleged "testimony" in this case could not have been the cause of a trademark infringement claim in this lawsuit (*against IDEXX*), and (2) the Petrays' lawsuit was filed *after* Wallack executed the Agreement, which means that any testimony in the Petrays' lawsuit could not have been, as a matter of law, the basis of a claim by Wallack against the Individual Defendants for breach of fiduciary duty.

  Second, SDVI never asserted a trademark infringement claim against the Individual Defendants.  Therefore, whether SDVI ever had a viable trademark infringement claim against *IDEXX* cannot be evidence that the claims that Wallack asserted against the Individual Defendants were asserted in good faith.[2]

  This Court, in ruling on the Individual Defendants' motion for summary judgment, concluded: (1) there was no evidence that prior to the parties' execution of the Agreement in 2009, the Individual Defendants had an intent to steal the

---

[2] To the extent that SDVI suggests that the trademark infringement claim was resolved in its favor, leading it to conclude that such a resolution undermines a finding of "bad faith," its suggestion is irrelevant to the pending motion.  Any informal resolution that SDVI reached with IDEXX regarding the trademark infringement claim does not mean that there was a legal pronouncement regarding the validity of the claim.  More importantly, an informal resolution between SDVI and IDEXX regarding the trademark infringement claim certainly has no bearing on whether there ever was sufficient evidence for Wallack to allege a claim of breach of fiduciary duty (or any other claims alleged) against Dr. Wright and Mr. Walters.  (*See* Fed. R. Evid. 408 *et seq*.)

DVMinsight trademark as part of the DVMI asset sale to IDEXX in September 2011, nearly two years after Wallack had executed the Agreement, (2) Wallack did not have standing to raise, as an allegation in support of his breach of fiduciary duty claim, that the Individual Defendants' intended to steal the DVMI trademark from SDVI, and (3) there was no fiduciary relationship between the Individual Defendants and Wallack as of September 2011 when IDEXX purchased the DVMI assets. (*See* Defendants' NOL, Ex. P-21 (line 8) through P-22 (line 8).)

Notwithstanding this, and in an apparent effort to deflect attention from their own vexatious conduct, Plaintiffs repeatedly refer to Walters' and Wright's "lies to IDEXX that they owned the Trademark. . . ." (Opposition, pp, 2, 12.) While the Individual Defendants take issue with and vehemently deny such an inflammatory accusation[3], the fact of the matter is that, regardless of what the Individual Defendants did or did not tell IDEXX in 2011 (nearly two years after Wallack executed the Agreement and divested himself of his ownership in DVM Insight, Inc.), any statements the Individual Defendants did or did not make to IDEXX *in 2011* would have come at a time when they owed no fiduciary duty to Wallack. Simply put, Plaintiffs' effort to obfuscate the issues fails to refute the need for an order sanctioning Plaintiffs and their counsel for their blatant misuse of the judicial process.

## IV.

## PLAINTIFFS AND THEIR COUNSEL IMPROPERLY MULTIPLIED THIS FRIVOLOUS PROCEEDING

In an effort to avoid sanctions under 28 U.S.C. § 1927, Plaintiffs assert that "other than amending the Complaint and opposing Wright/Walters's motions, Plaintiffs did NOTHING to multiply the proceedings in this case." (Opposition, p. 23, ll. 3-5 (emphasis in original).) Plaintiffs and their counsel, once again, miss the point.

---

[3] Wright expressly testified during his deposition in this matter that during the 2011 negotiations with IDEXX, he expressly informed IDEXX that the trademark registration document for DVMinsight reflected SDVI as the owner. (*See* Deposition of Matthew Wright, 166:1-20; Deposition of Don Schofield, 6:4-10; 35:14-24; 68:8-22.)

As set forth above, by perpetually amending the pleading without disclosing the material (and dispositive) facts, facts that Plaintiffs and their counsel knew or should have known to be dispositive in this case, Plaintiffs vexatiously multiplied the proceedings. By opposing the Individual Defendants' motions notwithstanding their knowledge of the material and dispositive facts, Plaintiffs vexatiously multiplied the proceedings. By conducting discovery and taking depositions of the Individual Defendants notwithstanding their knowledge of the material and dispositive facts, Plaintiffs vexatiously multiplied the proceedings.

Plaintiffs cannot escape liability for their actions by suggesting that all they did after filing this lawsuit was to participate, almost reactively or passively, in the litigation process. This lawsuit never should have been filed. The fact that this litigation took four years to bring to closure when the end could have been reached if Plaintiffs and their counsel, at any point in this litigation, had pleaded *all* of the facts underscores the propriety of a sanctions order in this case.

## V.

## WRIGHT AND WALTERS HAVE SUFFICIENTLY DOCUMENTED THE ATTORNEYS' FEES AND COSTS INCURRED IN THIS MATTER

Plaintiffs and their counsel argue that the Individual Defendants' request for attorneys' fees as sanctions should be denied because the documentation submitted does not afford the Court the opportunity to assess what amount were incurred as a result of the "offending conduct." This argument necessarily must fail.

Notably, Plaintiffs did not submit any evidence to refute the reasonableness of the attorney time expended in defending the Individual Defendants in this matter. Consequently, Plaintiffs are precluded from challenging the fees sought.

Despite this, Plaintiffs suggest that there might be fees sought that are unrelated to the "offending conduct" and, by way of example, states that "it cannot be determined what amounts if any were incurred involving the trademark infringement

aspect of this case."[4] (Opposition, p. 25, ll. 6-8.) Plaintiffs and their counsel, however, continue to fail to appreciate that the "offending conduct" was the filing and pursuit of any claims against the Individual Defendants in light of the Release. Consequently, **all** of the fees incurred by the Individual Defendants were incurred because of Plaintiffs' and their counsel's bad faith conduct, and the motion for sanctions should be granted.[5]

## VI.
## CONCLUSION

But-for Plaintiffs' and their counsel's bad faith conduct in purposefully omitting material facts from the pleadings, the Individual Defendants never would have had to endure the expense and personal turmoil attendant to years of protracted litigation. As a result, the Individual Defendants respectfully request that this Court grant their motion for attorneys' fees as sanctions pursuant to the Court's inherent authority and/or 28 U.S.C. § 1927 and order Plaintiffs and their counsel to pay the Individual Defendants $92,530.00 or, in the alternative, order Plaintiffs' counsel to pay the Individual Defendants $71,820, the amount that the Individual Defendants incurred after May 7, 2013 defending themselves against Plaintiffs' frivolous claims plus the cost of pursuing these sanctions.

Dated: May 5, 2016                                SCHOR & FREELAND, LLP

                                                  By:   /s/ Cynthia A. Freeland
                                                        Cynthia A. Freeland

                                                  Attorneys for Matthew Wright and
                                                  Stephen Walters

---

[4] As an aside, this is an interesting argument given that the vast majority of Plaintiffs' Opposition to the Motion for Sanctions argues that the trademark infringement claim was caused primarily by the Individual Defendants.

[5] To the extent that the Court has any questions about the attorneys' fees requested, the Individual Defendants reiterate their offer to make their attorneys' invoices available for an in camera review.