1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| SETH WALLACK and SAN DIEGO VETERINARY IMAGING, INC., | CASE NO. 11cv2996-GPC(KSC) |
| Plaintiffs, | **ORDER DENYING DEFENDANTS WRIGHT AND WALTERS' MOTION FOR ATTORNEYS' FEES** |
| vs. | |
| IDEXX LABORATORIES, INC.; IDEXX REFERENCE LABORATORIES, INC.; MATTHEW WRIGHT; an individual; and STEPHEN WALTERS, an individual | [Dkt. No. 149.] |
| Defendants. | |

11
12
13
14
15
16
17
18

Before the Court is Defendants Matthew Wright and Stephen Walters'

19

("Defendants") motion for attorneys' fees as sanctions pursuant to the Court's inherent

20

authority and pursuant to 28 U.S.C. § 1927. (Dkt. No. 149.) Plaintiffs filed an

21

opposition and Defendants replied. (Dkt. Nos. 154, 157.) After a review of the briefs,

22

supporting documentation and the applicable law, the Court DENIES Defendants'

23

motion for attorneys' fees.

24

**Procedural Background**

25

On December 22, 2011, Plaintiff Seth Wallack ("Wallack") and San Diego

26

Veterinary Imaging, Inc. ("SDVI") (collectively "Plaintiffs") filed a complaint against

27

Defendants Idexx Laboratories, Inc., Idexx Reference Laboratories, Inc. (collectively

28

"Idexx Defendants"), Matthew Wright ("Wright") and Stephen Walters ("Walters")

alleging numerous causes of action for federal and state securities fraud, fraud related causes of action, and trademark infringement. (Dkt. No. 1.)  On February 24, 2012, Defendants Walters and Wright, and Idexx Defendants filed separate motions to dismiss. (Dkt. Nos. 9, 15.)  On April 11, 2013, the Court granted in part and denied in part all Defendants' motions to dismiss with leave to amend. (Dkt. No. 33.)  A first amended complaint was filed on May 2, 2013. (Dkt. No. 34.)  On May 16, 2013, Defendants Walters and Wright filed a motion to dismiss and on May 30, 2013, Idexx Defendants filed a motion to dismiss. (Dkt. Nos. 37, 39.)  On September 12, 2013, the Court granted in part and denied in part Defendants' motions to dismiss with leave to amend. (Dkt. No. 49.)  The operative second amended complaint was filed on September 26, 2013 and asserted four causes of action: (1) trademark infringement by Plaintiff SDVI against Idexx Defendants; (2) breach of fiduciary duty by Plaintiff Wallack against Wright and Walters; (3) civil conspiracy by Plaintiffs against all Defendants; and (4) request for declaratory relief by Plaintiffs against Idexx Defendants. (Dkt. No. 50.)  Defendants Wright and Walters moved to dismiss the second cause of action for breach of fiduciary duty, and third cause of action for civil conspiracy on October 7, 2013. (Dkt. No. 52.)  On April 14, 2014, the Court denied Defendants' motion to dismiss the breach of fiduciary duty claim, and granted their motion to dismiss the civil conspiracy claim with prejudice. (Dkt. No. 68.)  Idexx Defendants filed a counterclaim against Plaintiffs on May 12, 2014. (Dkt. No. 73.)  On February 12, 2015, Defendants filed a motion for summary judgment on the remaining causes of action for breach of fiduciary duty. (Dkt. No. 87.)  On April 15, 2015, the Court granted Defendants Wright and Walters' motion for summary judgment for breach of fiduciary duty. (Dkt. No. 99.)  The Court concluded that the general release contained in the Stock Repurchase Agreement barred the claim. (Id.)  On July 15, 2015, Idexx Defendants filed a motion for summary judgment on the trademark infringement claim and declaratory relief related to the trademark which the Court denied on October 13, 2015. (Dkt. Nos. 103, 136.)  In March 2016, Plaintiff and Idexx

1  Defendants filed a joint motion to dismiss the complaint and counterclaims with

2  prejudice which the Court granted. (Dkt. Nos. 143, 146.)

3                              **Factual Background**[1]

4       Plaintiff is a licensed veterinary radiologist and established San Diego

5  Veterinary Imaging, Inc. ("SDVI"), in 2002, to conduct his veterinary radiology

6  practice.   (Dkt. No. 93-5, Wallack Decl. ¶¶ 2, 8.)   In the early 2000s, Plaintiff

7  recognized the need and benefit of digital imagery to view x-rays over the internet

8  instead of "making the rounds" and visiting veterinary offices, clinics and hospitals to

9  conduct his practice. (Id. ¶¶ 2, 3, 4.) In early 2004, Plaintiff contemplated and began

10 work to develop a software program to serve as a "platform" for veterinary radiologists

11 where they could keep, organize, retrieve and use all of their imagery. (Id. ¶ 7.)

12      At that time, Plaintiff hired Defendant Stephen Walters, a computer programmer,

13 to assist in the programming and coding of the computer platform/website. (Id. ¶ 9.)

14 They worked together for months to develop the program and they agreed that Walters

15 would eventually become a 20% ownership in any future company. (Id.) Walters also

16 retained ownership of the portions of the source code/programmed information he

17 developed related to the platform/website. (Id.)

18      In early 2004, Plaintiff named the software "DVMInsight" and decided to

19 conduct his tele-radiology practice under the name "DVMInsight." (Id. ¶ 10.) In 2005,

20 SDVI established, through GoDaddy.com a domain name and website called

21 "DVMInsight.com" and SDVI registered the trademark "DVMInsight". (Id.)

22      In July 2005, Plaintiff created and incorporated a new business called Veterinary

23 Imaging Center of San Diego, Inc. ("VICSD"). (Id. ¶ 13.) VICSD replaced SDVI for

24 some but not all of his work.   (Id.)   After VICSD opened, Plaintiff performed

25 conventional veterinary radiology and tele-radiology under its auspices. (Id.)

26      At the end of November 2005, Defendant Wright, a veterinary radiologist,

27

28      [1]The facts are taken verbatim from the Court's order granting Defendants Wright
and Walter's motion for summary judgment. (Dkt. No. 99 at 2-7.)

joined Plaintiff to work at VICSD to work on the DVMInsight platform and set up a
new corporation called DVMInsight. Inc. (<u>Id.</u> ¶ 14.) In 2005/2006, Wright became the
manager and resident radiologist at VICSD so Plaintiff could generate funds by
"making the rounds" to veterinary hospitals. (<u>Id.</u>)

Wright, through his company Animal Insides, Inc., provided online commentary
on veterinary radiology and on the increasing importance of digital imaging in
veterinary radiology. (<u>Id.</u> ¶ 15.) Plaintiff appreciated Wright's talent for writing and
Wright expressed his appreciation for Plaintiff's talent for undertaking and organizing
the DVMInsight/VICSD initiatives. (<u>Id.</u>) All three worked to complete the
development of the software program. (<u>Id.</u>)

In September 2006, Plaintiff, Wright and Walters incorporated DVMInsight, Inc.
("DVMI"). (Dkt. No. 95-2, Ds' Concordance of Separate Statement of Undisputed
Material Facts ("CSSUF") No. 1.) At the time of incorporation, the purpose of
DVMInsight was threefold: 1) development of a software platform ("DVM platform")
that could be used by veterinarians for teleradiology purposes; 2) operation of a
website where clients and providers could use the software; and 3) the generation of
teleradiology work for Plaintiff and Wright. (<u>Id.</u>) At the time of incorporation,
Plaintiff and Wright each owned 40% of DVMI's outstanding stock, and Walters
owned the remaining 20%. (<u>Id.</u>, CSSUF No. 2.) Plaintiff, Wright and Walters were
named officers and directors of DVMI. (<u>Id.</u>) Plaintiff was the President, Director and
Shareholder. (<u>Id.</u>, CSSUF No. 4.) Plaintiff was never an employee of DVMI but he
occasionally read cases for DVMI. (<u>Id.</u>)

Plaintiff's role was to grow VICSD while Wright's role was to grow DVMI.
(Dkt. No. 87-16, Ds' NOL, Ex. I, Wallack Depo. at 88:6-11; 90:19-91:5.) Over time,
Plaintiff stepped away from being administratively involved at DVMI and allowed
Wright to take over and grow the business. (Dkt. No. 87-16, Ds' NOL, Ex. I, Wallack
Depo. at 71:5-16; 73:18-74:8.) Eventually, he was no longer involved in the day to day
operations of DVMI as he had a lot of other things going on. (<u>Id.</u>) There was a clear

1  separation of responsibilities. (Dkt. No. 87-16, Ds' NOL, Ex. I, Wallack Depo. at
2  90:19-91:5.) His role was to grow the VICSD business and he left Wright and Walters
3  in charge of the DVMI business. (Id.)

4    From the beginning of DVMI, Walters was employed and responsible for
5  information technology for the DVMI. (Dkt. No. 95-2, CSSUF No. 8.) In particular,
6  Walters was responsible for programming, keeping the servers up and running, and
7  providing high level technical support. (Id.) Wright also became an employee of
8  DVMI after he left employment at VICSD in June/July 2009. (Id., CSSUF No. 6.)
9  DVMI grew steadily. (Id., CSSUF No. 9.)

10    Around the spring 2009, Defendant Idexx Laboratories, Inc. ("Idexx") was
11  searching for partners for its teleradiology/storage needs and issued a Request for
12  Proposal ("RFP") to companies, including DVMI, to fulfill that need. (Id., CSSUF No.
13  10.) Wright made Plaintiff aware of the RFP and Defendants worked to prepare a
14  response on behalf of DVMI to offer its ImageBank services. (Id.) Because Plaintiff
15  devoted his full attention to VICSD, he did not have time to review the RFP or to
16  contribute, in a substantial way, to the RFP response. (Id.)

17    Wright nonetheless provided Plaintiff with the RFP response, kept him apprised
18  of the status of the response, and informed Plaintiff that in the late spring of 2009, he
19  would be traveling to Maine, where Idexx was headquartered, to present the response
20  and to explore any interest that Idexx had in purchasing DVMI. (Id., CSSUF No. 11.)
21  While Plaintiff now professes to have had a desire to attend the Idexx meeting, he
22  acknowledges that Wright did not stop him from accompanying Wright to the meeting
23  in Maine and that Plaintiff simply had other commitments outside of DVMI that
24  prevented him from attending. (Id.)

25    Wright testified that he and Farber discussed an offer where Idexx would pay a
26  multiple of 1.1-1.2 of DVMI's gross revenues to purchase DVMI's assets. (Dkt. No.
27  87-15, Ds' NOL, Ex. H, Wright Depo. at 134:22-135:6.) Wright calculated the amount
28  based on DVMI's $900,000 gross revenues for 2008/09 and came up with a purchase

price of $1 million. (Id.)  When Wright returned, he informed Walters and Plaintiff about the offer of $1 million and they collectively agreed it was not acceptable. (Id. at 145:22-146:4; Dkt. No. 93-5, Wallack Decl. ¶ 22.)

While it is disputed as to who initially raised the idea of DVMI buying out Plaintiff's shares, in August 2009, the parties exchanged emails about the possibility of buying Plaintiff out. (Dkt. No. 87-18, Ds' NOL, Ex. I at 16-18[2].) Plaintiff acknowledged that since Wright and Walters grew the company, they should reap the rewards. (Id. at 16.)  Plaintiff raised concern about distribution at the time for shareholder distributions since he was not involved in DVMI. (Id.) DVMI's attorney, Michael Christian ("Christian"), responded that Plaintiff should hold onto his 40% ownership and go along for the ride. (Id. at 17.)  However, Plaintiff responded that he did not agree because he did not think it would be fair and could result in a "train wreck when it is time for shareholder distributions." (Id.)  Plaintiff was open to a buyout. (Id.)  Later, in another email, Plaintiff wrote that he did not need to get out and was fine "staying in for the ride." (Id. at 18.)  At that time, discussions regarding a buyout ended.  As a result, Wright proposed a shareholder meeting to discuss the issue of shareholder distribution. (Dkt. No. 93-3, P's NOL, Ex. S at 274; 277-78.)  A shareholder meeting was held in August 2009. (Dkt. No. 87-17, Ds' NOL, Ex. I, Wallack Depo. at 146:2-3.)

On December 7, 2009, Plaintiff emailed Christian, DVMI's attorney, about having DVMI repurchase his shares and asked for advice. (Dkt. No. 87-20, Ds' NOL, Ex. J, Christian Depo. at 51:1-9; Dkt. No. 87-20, Ds' NOL at 18.)  Plaintiff wrote,

> I am forwarding an email I received today from Matt.  It is good to see the company is doing well however, the context of the message concerns me with respect to fiduciary responsibilities and bonuses intended to drive the year end profits to a level that would require retention of earnings.  I don't want to get into a legal battle so rather than call for an accounting evaluation I think it is better if the other shareholders buy me out.  I am steadfast on this decision and believe that a complete company valuation is required to determine a fair market value.

---

[2]The page numbers are based on the CM/ECF pagination.

(Dkt. No. 87-20, Ds' NOL at 18.) Christian informed Plaintiff that since he represented DVMI, he could not represent Plaintiff, a shareholder, against the interests of the company. (Dkt. No. 87-20, Ds' NOL, Ex. J, Christian Depo. at 63:3-8; Dkt. No. 87-20, Ds' NOL at 18.)

Plaintiff subsequently retained counsel, William Markham ("Markham"), to assist him in selling his shares to DVMI. (Dkt. No. 95-2, CSSUF No. 20.) In order to determine the value of DVMI, Plaintiff reached out to Farber at Idexx in December 2009 to confirm the information that Wright had relayed in April 2009 that an offer of a potential purchase price was made in the $1 to $1.1 million range. (Dkt. No. 95-2, CSSUF No. 21.)

In mid-December 2009, Plaintiff believed he had three options for effectuating the repurchase of his DVMI shares: 1) negotiations between the parties; 2) submission to binding arbitration and selection of a business valuation specialist/accountant whose valuation would be binding on the parties; or 3) litigation among the parties. (Dkt. No. 95-2, CSSUF No. 22.)

On December 18, 2009, Wallack, through his attorney, threatened to initiate a lawsuit against Defendants. (Dkt. No. 95-2, CSSUF No. 23; Dkt. No. 87-23, Ds' NOL, Ex. L at 24-25.) In an effort to resolve differences among the parties without litigation, Markham and Christian began working together in mid-December 2009 to negotiate a stock repurchase agreement. (Dkt. No. 95-2, CSSUF No. 36.) Negotiations continued through the latter part of December 2009 with the parties having vastly different views about the value of DVMI and the provisions to be included in any agreement. (Dkt. No. 95-2, CSSUF No. 37.) After negotiations with counsel and with the assistance of a third party, David Zanders, the parties reached an agreement. (Dkt. No. 95-2, CSSUF No. 37.) The parties executed a Stock Repurchase Agreement on December 31, 2009. (Dkt. No. 93-3, P's NOL, Ex. M.) Plaintiff agreed to sell his DVMI shares for $274,500 and received a payment of $30,000 in exchange for the settlement and mutual release. (Dkt. No. 95-2, CSSUF No. 37; Dkt. No. 93-3, P's

1  NOL, Ex. M.)

2  On September 9, 2011, DVMI and Idexx entered into an Asset Purchase

3  Agreement where Idexx purchased the assets of DVMI and Animal Insides, Inc. for

4  around $3,200,000.  (Dkt. No. 93-3, P's NOL, Ex. N; Dkt. No. 95-2, CSSUF No. 42.)

5  On December 22, 2011, Plaintiff and SDVI filed the instant action.  (Dkt. No. 1.)

6  **Discussion**

7  Defendants seek sanctions in the form of attorneys' fees against Plaintiffs under

8  the Court's inherent powers, or alternatively, under 28 U.S.C. § 1927.  Plaintiffs

9  oppose.

10  **A.   Court's Inherent Powers**

11  Defendants argue that Plaintiffs with the assistance of their counsel filed a

12  frivolous lawsuit whose purpose was to extort from Wright and Walters a portion of

13  the proceeds that they enjoyed when Idexx purchased the assets of DVMI in September

14  2011 even though Plaintiffs signed a general release barring these claims.  They further

15  argue that Wallack wrongfully used the judicial process to assuage his own seller's

16  remorse and engaged in bad faith conduct.  Defendants seek attorneys' fee incurred in

17  this case which amount to $92,530.00 plus the fees incurred with bringing the instant

18  motion.

19  Plaintiffs oppose arguing that they and their counsel did not act in bad faith in

20  prosecuting this case.  They violated no court orders, did nothing vexatious, and

21  prosecuted their claims reasonably and expeditiously.  According to Plaintiffs, they

22  prevailed on the trademark infringement against Idexx and that cause of action was

23  primarily caused by Defendants lying to Idexx that Wright was the person who created

24  the trademark, that the trademark transferred to DVMI as part of the Stock Repurchase

25  Agreement and then sold to Idexx.  Since Wright and Waters were the root causes of

26  the lawsuit, Wallack was forced to file the complaint to protect his trademark rights,

27  and the other causes of action were necessarily included in the complaint.

28  A court has the inherent power to assess attorneys' fees for "willful disobedience

of a court order . . . or when the losing part has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980) (citations omitted). Bad faith applies not only to actions that led to filing the complaint but also to conduct during the litigation. Id. The court may assess attorneys' fees against the responsible party when the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." Chambers v. Nasco, 501 U.S. 32, 46 (1991). Due to its potency "inherent powers must be exercised with restraint and discretion." Id. at 44.

A specific finding of bad faith or conduct tantamount to bad faith is required for inherent power sanctions. Fink v. Gomez, 239 F.3d 989, 993, 994 (9th Cir. 2001); see also Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir. 1993) (quoting United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir.1986)); accord Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th Cir. 1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power.") Bad faith conduct includes willful actions such as "recklessness combined with an additional factor, such as frivolousness, harassment, or an improper purpose." Fink, 239 F.3d at 994. "[S]anctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" Primus Auto. Fin. Servs, Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) (citation omitted). A finding of bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." In re Itel Sec. Litig., 791 F.2d 672, 675 (9th Cir. 1986) (quoting Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 182 (D.C. Cir. 1980)).

In Barber v. Miller, the Ninth Circuit affirmed the district court's denial of sanctions under 28 U.S.C. § 1927 and the court's inherent authority where the district

court found that the record demonstrated ignorance or negligence on the part of the plaintiff's counsel but not a finding of bad faith or recklessness. Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998). In Barber, the plaintiff filed a complaint alleging patent infringement and numerous state law causes of action. Id. at 709. Plaintiff's counsel conceded the plaintiff did not own the patent in question but she had transferred it to another. Id. The defendant sent the plaintiff's counsel a letter warning that there was no federal jurisdiction due to lack of standing and the claims were barred by a mutual general release and if the complaint was not dismissed, it would seek sanctions under Federal Rule of Civil Procedure 11(c). Id. Eventually, the district court dismissed the complaint for lack of standing, the same issue previously raised by the defendant. Id. At a hearing, the district court commented on plaintiff's counsel's "tactical bad faith" and suggested that his lawsuit was a nuisance suit to extract a settlement and granted defendant's motion to dismiss with prejudice. Id. The defendant subsequently filed a motion for sanctions. Id. The district court imposed sanctions under Rule 11 but denied sanctions under the court's inherent authority and under 28 U.S.C. § 1927. Id. The Ninth Circuit reversed the Rule 11 sanctions due to the defendant's failure to follow the procedures and affirmed the district court's denial of sanctions under its inherent authority and 28 U.S.C. § 1927 because there was no finding that counsel was reckless or acted in bad faith; instead the evidence demonstrated ignorance or negligence. Id. at 711.

Here, the Court granted Wright and Walters' motion for summary judgment on the breach of fiduciary duty claim because the general release contained in the Stock Repurchase Agreement barred that claim. (Dkt. No. 99.) The Court concluded that Wallack was aware of all the facts surrounding the breach of fiduciary claim prior to signing the Stock Repurchase Agreement. (Id. at 22.)

Defendants argue that the Court, while it did not make a finding of bad faith, concluded that the undisputed evidence, which were known to Wallack before the case was filed, that he released the Defendants in 2009 from the claims he raised in this

case.  Based on this, Defendants contend that there is a logical inference that the action was so completely without merit from its inception that it was pursued with an improper purpose.  Plaintiffs contend that because Wright and Walters were the underlying cause, by trying to sell the trademark to Idexx, of the trademark infringement, Wallack was forced to file the complaint.

While a general release can be complete bar to known and unknown claims at the time of the release, a release can be voided if (1) there was fraud in the inception - misrepresenting the nature or contents of the document being executed; (2) a release obtained by a fiduciary without full disclosure of the relevant facts; or (3) fraud as a ground for not applying a release to an unknown claim because the fraud prevented the releasor from knowing about the claim.  San Diego Hospice v. Cnty. of San Diego, 31 Cal. App. 4th 1048, 1053, 1054 n.2 (1995).  In determining the enforceability of a release, courts consider (1) whether the parties are represented by counsel; (2) whether the releasor was aware of any potential claims, and (3) whether the releasor with this awareness of the second factor, and advice of counsel, the releasor agreed to release unknown claims explicitly waiving the protection of California Civil Code section 1542.  Id. at 1054 (citing Winet v. Price, 4 Cal. App. 4th 1173, 1168 (1992)).

Based on this legal standard, Plaintiffs had a plausible argument for voiding the general release based on fraud and/or breach of fiduciary duty.  In the spring of 2009, Wright flew to Maine and met with an Idexx representative concerning Idexx' interest in purchasing DVMI where Idexx indicated it would pay about $1 million for DVMI.  As the year progressed, the relationship between Wallack, and Wright and Walters became strained which led to discussions about buying Wallack out starting in August 2009.  As the relationship deteriorated, the parties executed a Stock Repurchase Agreement on December 31, 2009 where Wright and Walters bought out Wallack's share in DVMI.  The Stock Repurchase Agreement contained a mutual general release.  Under the Agreement, Wallack received $274,500 for selling his shares in DVMI and $30,000 for the settlement and mutual release.  Almost two years later, in September

2011, Idexx purchased DVMI and Animal Insides, Inc. for around $3.2 million, which was 4.3 times higher than the valuation that the parties used to buy out Wallack.  In that same month, Wallack was approached by an executive at Idexx at a convention they were attending and offered Wallack $5,000 for SDVI to transfer the trademark to Idexx.  It was at that time that Wallack learned about the sale of DVMI to Idexx.  Then in November 2011, Idexx attempted to have the trademark registered in its name which was rejected by the U.S. Patent and Trademark Office.

While certain facts supporting breach of fiduciary duty were known to Plaintiffs at the time of the Stock Repurchase Agreement, it was not until after the Stock Repurchase Agreement that Wallack was approached by an Idexx representative who sought to purchase the trademark and Wallack learned of the $3.2 million sale of DVMI to Idexx in 2011.  According to Plaintiffs, SDVI was the owner of the trademark as it was not part of the Stock Repurchase Agreement, and Idexx' attempt to buy or register the trademark meant that Wright and Walters must have attempted to sell the trademark to Idexx in September 2011.  According to Plaintiffs, the sales price of $3.2 million for SDVI most likely included ownership of the trademark.  Therefore, these facts support an allegation of fraud and/or breach of fiduciary duty, concerning the alleged sale or transfer of the trademark to Idexx, that could void the release.

However, through discovery, the additional facts did not support a claim for breach of fiduciary duty, and summary judgment was granted in favor of Defendants. Plaintiffs provide the declarations of Wallack, their counsel, and former counsel concerning their due diligence by carefully reviewing the record and conducting legal analysis before filing the complaint in this case.  (Dkt. Nos. 154-1, 154-2, 154-3.) Former counsel stated that he spent 73.3 hours prior to filing the complaint to review the facts and applicable law, including significant research on whether the causes of actions were viable in light of the general release.  (Dkt. No. 154-2, Markham Decl. ¶ 5.)  Current counsel states he spent 40-50 hours reviewing the record, the pleadings, motions and talking with Wallack to determine whether the general release could be

[11cv2996-GPC(KSC)]

1   voided. (Dkt. No. 154-3, Millar Decl. ¶ 5.) On the other hand, Defendants present no

2   facts, besides an inference that is not supported, that Plaintiffs and their counsel acted

3   in bad faith or that the lawsuit was brought for an improper purpose.

4       Defendants also argue that "had all the pertinent facts been pleaded at the

5   inception of this lawsuit, the case would have been dismissed at the pleading stage

6   because ultimately the Summary Judgment Order was issued because of the Release

7   Argument." (Dkt. No. 149-1 at 11-12.) However, Rule 8 only requires "a short and

8   plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

9   P. 8(a). Defendants do not provide any legal support for their argument that more is

10  required. Plaintiffs sufficiently alleged causes of action for breach of fiduciary duty

11  and trademark infringement in their second amended complaint.

12      Accordingly, the Court concludes that Plaintiffs and their counsel did not bring

13  the instant case or pursue the litigation in bad faith and the causes of action brought

14  were not wholly frivolous and not brought for an improper purpose. Accordingly, the

15  Court DENIES Defendants' motion for sanctions under the Court's inherent powers.

16  **B.    28 U.S.C. § 1927**

17      Alternatively, in the event the Court denies Wright and Walter's motion for

18  attorneys' fee based on the court's inherent power, it should award attorneys' fees

19  under 28 U.S.C. § 1927 because Plaintiffs' attorney should have known better than to

20  continue pursuing claims by filing a complaint and engaging in conduct that multiplied

21  the proceedings.

22      28 U.S.C. § 1927 provides:

23      Any attorney or other person admitted to conduct cases in any court of
        the United States or any Territory thereof who so multiplies the
24      proceedings in any case unreasonably and vexatiously may be required
        by the court to satisfy personally the excess costs, expenses, and
25      attorneys' fees reasonably incurred because of such conduct.

26  28 U.S.C. § 1927. District courts have discretionary authority "to hold attorneys

27  personally liable for excessive costs for unreasonably multiplying proceedings."

28  Gadda v. Ashcroft, 377 F.3d 934, 943 n. 4 (9th Cir. 2004). An attorney who

1  "multiplies the proceedings" may be required to pay the excess fees and costs caused

2  by such conduct.  Braunstein v. Arizona Dep't of Transp., 683 F.3d 1177, 1189 (9th

3  Cir. 2012).  There must be a showing of the attorney's recklessness or bad faith.  Estate

4  of Blas ex rel. Chargualaf v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986).  "Bad faith

5  is present when an attorney knowingly or recklessly raises a frivolous argument or

6  argues a meritorious claim for the purpose of harassing an opponent."  Id.  "Bad faith

7  may be inferred from a totally baseless course of conduct."  Id.  Ignorance or

8  negligence or incompetence does not support a finding of recklessness or bad faith.

9  Banas v. Volcano Corp., 47 F. Supp. 3d 941 (N.D. Cal. 2014) (citing Park B. Smith,

10  Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 766, 775 (S.D.N.Y. 2011)).

11       Sanctions under § 1927 are warranted when attorneys file repetitive motions or

12  generate an extraordinary volume of paperwork in the case.  Braunstein, 683 F.3d at

13  1189.  Sanctions do not apply to the filing of a complaint because § 1927 applies to

14  unnecessarily multiplying the proceedings after a complaint is filed.  In re Keegan

15  Mgmt. Co., Securities Litigation, 78 F.3d 431, 435 (9th Cir. 1996). A "frivolous" filing

16  is one "that is both baseless and made without a reasonable and competent inquiry."

17  Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005).

18       Defendants argue that Plaintiffs' counsel acted in bad faith as he knew or should

19  have known that the legal and factual contentions, that he himself repeatedly included

20  in pleadings and oppositions were not only weak, they were wholly lacking in merit as

21  the Court ultimately ruled.  They contend that if Plaintiffs' counsel had fulfilled his

22  obligations to conduct research when he substituted in as counsel, he would have

23  known that the bases of any alleged claims had been validly released with the Stock

24  Purchase Agreement in 2009; therefore, he acted in bad faith.  By filing the first

25  amended complaint, the second amended complaint, the opposition to the MSJ, and

26  pursuing discovery, he multiplied the proceedings that he knew would not alter the

27  outcome.  Defendants also allege that Plaintiffs' counsel purposely presented

28  allegations to this Court that he knew to be false and/or he did not plead facts, that, if

[11cv2996-GPC(KSC)]

they had presented with the initial pleading, would have foreclosed years of needless litigation.   Plaintiffs disagree arguing that there were no unnecessary delays or extensions of time.  Counsel for Plaintiffs states that he did not commit bad faith and he prosecuted the case in good faith despite the MSJ outcome and in light of the overall outcome of the case.

Similarly, based on reasoning above, counsel for Plaintiffs did not purposely prolong the proceedings by filing amended complaints, and oppositions, and seeking discovery in the case.  He was advocating and vigorously representing his client. Moreover, as the Court concluded above, Plaintiffs' counsel had a reasonable basis to file a complaint in this case.

Thus, the Court concludes that Defendants did not multiply the proceedings unreasonably or vexatiously. The Court DENIES Defendants' motion for attorneys' fees pursuant to 28 U.S.C. § 1927.

### Conclusion

Based on the above, the Court DENIES Defendants Wright and Walters' motion for attorneys' fees.  The hearing set for June 3, 2016 shall be **vacated.**

IT IS SO ORDERED.

DATED:  June 1, 2016

HON. GONZALO P. CURIEL
United States District Judge

[11cv2996-GPC(KSC)]